# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 10-320 (RMC)** |
| | ) | |
| **THOMAS ANDERSON BOWDOIN, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Thomas Anderson Bowdoin, Jr., indicted by a Grand Jury in the District of Columbia on charges of Wire Fraud, Securities Fraud, Aiding and Abetting, and the Unlawful Sale of Unregistered Securities, moves to transfer this prosecution to the Northern District of Florida, Tallahassee Division, for the convenience of the parties and witnesses and in the interests of justice. However, this criminal prosecution is only the most recent iteration of a lengthy investigation and civil enforcement actions against Mr. Bowdoin and AdSurfDaily, Inc. (also "ASD"), an alleged Ponzi scheme that Mr. Bowdoin operated on the Internet, which has been ongoing in this Court since 2008. *See United States v. Funds Totaling $496,505.34*, 10-cv-2147 (RMC); *United States v. 2 North Adams Street, Quincy, Florida 32351*, 08-cv-2205 (RMC); *United States v. 8 Gilcrease Lane, Quincy, Florida 32351*, 08-cv-1345 (RMC). Mr. Bowdoin and counsel have appeared multiple times. After carefully considering the briefs, and holding oral argument on the motion, the Court declines to transfer the case.

# I. FACTS

Litigation between Mr. Bowdoin and the Government over his Internet activities began on August 8, 2008, when the United States filed a civil forfeiture action, *in rem*, to enforce (1) 18 U.S.C. § 981(a)(1)(C), which authorizes the forfeiture of any property that constitutes or is derived from proceeds traceable to, *inter alia*, any offense, or conspiracy to commit any offense, that is a "specified unlawful activity" set forth in the federal anti-money laundering statutes, including wire fraud (18 U.S.C. § 1343); and (2) 18 U.S.C. § 981(a)(1)(A), which authorizes the forfeiture of any property that is involved in a money laundering offense (18 U.S.C. §§ 1956 or 1957). *8 Gilcrease Lane*, 08-cv-1343 (RMC), Compl. [Dkt. # 1] ¶ 1. The defendant real properties were: (a) 8 Gilcrease Lane, Quincy, Florida 94590 and (b) one condominium owned by Thomas A. Bowdoin, Jr., in Myrtle Beach, South Carolina. Compl. ¶ 4. The defendant personal properties consisted of approximately $53 million in various accounts at the Bank of America, held in the name of Thomas A. Bowdoin, Jr., Sole Proprietor, d/b/a AdSurfDaily or d/b/a Golden Panda Ad Builder. *Id.* ¶ 5. The complaint alleged that "ASD is in fact operating a paid auto-surfing program and that program is, in reality, merely a Ponzi scheme." *Id.* ¶ 16.[1] Mr. Bowdoin was alleged to be the Chief Executive Officer and President of ASD. *Id.* ¶ 18.

ASD, Mr. Bowdoin, and Bowdoin/Harris Enterprises, Inc., filed verified claims for the real properties and bank funds that the Government had seized. *8 Gilcrease Lane,*, 08-cv-1345 (RMC), Verified Claims [Dkt. # 6]. ASD filed an emergency motion in this Court for return of the

---

[1] "Ponzi schemes promote allegedly lucrative business opportunities, often involving . . . high-return investments. But, in a Ponzi scheme, there is in fact no underlying profitable business to support the payments promoters say they will make to the investors/participants. Instead, . . . the promoters use the money obtained from a growing base of later investors/participants to pay so-called 'profits' to earlier investors." *8 Gilcrease Lane,*, 08-cv-1345 (RMC), Compl. ¶ 9.

seized funds and to dismiss. *Id.*, Emergency Mot. for Return of Seized Funds [Dkt. #7]. After a two-day evidentiary hearing, at which Mr. Bowdoin appeared and was eager to testify (but did not), the Court denied the motion, finding that "it lacks legal authority under 18 U.S.C. § 981(f) to order release of the seized funds and that ASD has failed to demonstrate that its assets are not proceeds derived from unlawful activity." *Id.*, Mem. Op. [Dkt. # 35] 1.

Thereafter, on January 13, 2009, ASD, Mr. Bowdoin, and Bowdoin/Harris Enterprises, Inc. withdrew and released their claims with prejudice and consented to forfeiture. *Id.*, Mot. to Withdraw Claims [Dkt. # 39] ("Claimants consent to the forfeiture of the properties for which they have asserted claims (i.e., the real property at 8 Gilcrease Lane and the bank account balances at the Bank of America in the names of Thomas A. Bowdoin, Jr., sole proprietor, d/b/a AdSurfDaily) and expressly announce their intention to not contest the Government's forfeiture efforts against the properties for which they have asserted claims.").

Nonetheless, on February 27, 2009, Mr. Bowdoin filed a *pro se* motion on his own behalf to set aside the forfeiture and to dismiss the case for lack of jurisdiction, arguing that although the case "may be filed as a civil action, it must be treated as quasi-criminal with a standard of review of proof of clear and convincing evidence, not just preponderance of evidence." *Id.*, Mot. to Set Aside Asset Forfeiture [Dkt. # 49] 1. Mr. Bowdoin also filed a *pro se* motion to dismiss for lack of advance fair notice, to wit: "Defendant did not know or realize that his conduct was illegal until this instant case was filed against him [and] due process requires that a person be given fair notice as to what constitutes illegal conduct so that he may conform his conduct to the requirements of the law." *Id.*, Mot. to Dismiss Due to Lack of Advance Notice [Dkt. # 50] 1. In addition, Mr. Bowdoin filed a *pro se* "Notice of Rescission and Withdrawal of Release of Claims to Seized Property and Consent

to Forfeiture," blaming his counsel for bad advice. *Id.*, Notice [Dkt. # 55] ¶ 2. By decision dated September 18, 2009, the Court denied Mr. Bowdoin's motion to set aside his consent to asset forfeiture and dismiss the complaint and denied the motion to dismiss for lack of fair advance notice. *Id.*, Mem. Op. [Dkt. # 138].

On the same day, Mr. Bowdoin and his business, Bowdoin Harris Enterprises, represented by Attorney Charles Murray, filed a second motion requesting an evidentiary hearing on a renewed motion to rescind the release of claims for the seized real and personal property. *Id.*, Second Mot. Requesting Evidentiary Hrg. [Dkt. # 141]. In its Memorandum Opinion on this second motion, the Court noted:

> Mr. Bowdoin seeks to restore his right to litigate his claim to the defendant properties, arguing that his prior counsel gave him bad advice and the Government tricked him into releasing his claims. As Mr. Bowdoin's own descriptions of events fail to support these arguments, and there is no other reason to grant reconsideration under Rule 60(b), the Court will deny the motion.

*Id.*, Mem. Op. [Dkt. # 155] 1.

When the Government moved for default judgment on November 17, 2009, *see id.*, Mot. for Default J. [Dkt. # 161], the Court issued an Order to Show Cause to all claimants to the property, including Mr. Bowdoin, to show cause why the motion should not be granted. *Id.*, Order to Show Cause [Dkt. # 163]. Failing response, on January 4, 2010, the Court issued an order granting default judgment against the properties and other assets. *Id.*, Order [Dkt. # 166]. Mr. Bowdoin filed a motion for relief from judgment. *See id.*, Mot. for Relief [Dkt. # 167]. The Court denied this motion by Minute Order on February 22, 2010, and Mr. Bowdoin filed a notice of appeal on March 1, 2010. That matter remains under advisement before the U.S. Court of Appeals for the

D.C. Circuit.

A second civil complaint for forfeiture *in rem* was filed by the Government on December 19, 2008, seeking to enforce (1) 18 U.S.C. § 981(a)(1)(C), which authorizes the forfeiture of any property that constitutes or is derived from proceeds traceable to, *inter alia*, any offense, or conspiracy to commit any offense, including wire fraud (18 U.S.C. § 1343) and securities fraud (15 U.S.C. § 77e(a), (c), 78j(b), and 17 C.F.R. 240.10b-5); and (2) 18 U.S.C. § 981(a)(1)(A), which authorizes the forfeiture of any property that is involved in a money laundering offense (18 U.S.C. §§ 1956 or 1957). *United States v. 2 North Adams Street, Quincy, Florida 32351*, 08-cv-2205 (RMC), Compl. [Dkt. # 1] ¶ 1. The defendant real properties were 2 North Adams Street, Quincy, Florida, and 205 Cactus Street, Tallahassee, Florida. *Id.* ¶ 4. The defendant personal properties were: (a) $634,266.13; (b) one 2009 Lincoln MKS vehicle; (c) a 2008 Triton 20 foot Cabana boat; (d) two 2007 Bombardier jet skis; (e) one 2009 Acura TXS vehicle; (f) one 2008 Honda CRV vehicle; and (g) computers and other equipment. *Id.* ¶ 5.

Neither Mr. Bowdoin nor any other claimant filed a verified claim to the relevant properties and, in response to the Government's motion for default judgment and forfeiture, *see 2 North Adams Street*, 08-cv-2205, Mot. for Default J. [Dkt. # 10], the Court issued an Order to Show Cause why the motion should not be granted. *See id.*, Order [Dkt. # 11]. Mr. Bowdoin responded and argued that an adversarial evidentiary hearing was required, regarding probable cause on the underlying criminal offense and the evidentiary nexus between the seized properties and the alleged criminal scheme. *Id.*, Opp'n [Dkt. # 12]. On that motion, Mr. Bowdoin was represented by Charles A. Murray and Michael R.N. McDonnell, who continue as his counsel in this criminal case. Because Mr. Bowdoin had failed to file a verified claim to the property at issue in *2 North Adams Street*, the

Government's motion for default judgment and judgment of forfeiture was granted. *See id.*, Order [Dkt. ## 14 & 15].

Mr. Bowdoin appealed, and the Circuit dismissed the appeal. *Id.,* Order of the U.S. Court of Appeals for the D.C. Cir. [Dkt. # 20]. The Circuit "ORDERED that the motion to dismiss be granted. The purported appellants did not file a verified claim in this civil forfeiture action, and thus are not parties to this action." *Id.*

A third civil complaint for forfeiture *in rem* was filed by the Government on December 17, 2010, seeking to enforce 18 U.S.C. § 981(a)(1)(C), which authorizes the forfeiture of any property that constitutes or is derived from proceeds traceable to, *inter alia*, any offense, or conspiracy to commit any offense, including wire fraud (18 U.S.C. § 1343), securities fraud (15 U.S.C. § 78j(b) and 78ff; 17 C.F.R. 240.10b-5); and unlawful sale of unregistered securities (15 U.S.C. § 77e(a)(2), 77x; 17 C.F.R. 240.144). *United States v. Funds Totaling $496,505.34*, 10-cv-2147 (RMC), Compl. [Dkt. # 1] at 1-2. The defendant personal properties consisted of approximately $795,000 in various accounts at the Bank of America, Wachovia Bank, and Flagstar Bank, held in the name of Thomas A. Bowdoin, Jr. (d/b/a ASD or Golden Panda Ad Builder), Robyn Lynn, or Erma Seabaugh. *Id*. ¶ 1.

The Court recites this tortured history only to demonstrate Mr. Bowdoin's consistent position as a litigant in the District of Columbia, often with his current counsel representing him. He has repeatedly argued vociferously, if tardily, for an evidentiary hearing on the underlying alleged criminal activities, which a criminal trial would provide. No murmur has ever been made concerning a change of venue. This history bears directly on the motion to transfer.

This criminal matter was initiated by a Sealed Indictment as to Mr. Bowdoin, filed

on November 23, 2010. Messrs. Murray and McDonnell again represent him. Counsel for Mr. Bowdoin filed the instant Motion to Change Venue for Trial on January 31, 2011.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 21(b), a district court has the discretion to transfer a criminal trial "to another district for the convenience of the parties and witnesses and in the interests of justice." Fed. R. CIM. P. 21(b). The Supreme Court laid out a balancing test to be used in exercising such discretion in *Platt v. Minnesota Mining & Mfg., Co.*, 376 U.S. 240 (1964). Both parties agree that *Platt* identified ten factors that should be considered in determining whether a transfer should be granted and that it governs here. "No one of the *Platt* considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Quinn*, 401 F. Supp. 2d 80, 85 (D.D.C. 2005) (internal citation and quotations omitted). If the *Platt* factors are equally balanced, a court should deny a motion to transfer. *Id.* A trial judge's discretion in deciding motions to transfer venue is not overturned unless there is an abuse of discretion. *Jones v. Gasch*, 404 F.2d 1231, 1242 (D.C. Cir. 1967); *see also United States v. Robinson*, 20 F.3d 270, 275 (7th Cir. 1994).

The factors to consider under *Platt* include:

(1)     location of the defendant;

(2)     location of possible witnesses;

(3)     location of events likely to be in issue;

(4)     location of documents and records likely to be involved;

(5)     disruption of the defendant's business;

(6)     expense to the parties;

(7)     location of counsel;

(8)     relative accessibility of place of trial;

(9)     docket condition of each district of division involved; and

(10)    any other special elements which might affect the transfer.

*Platt*, 376 U.S. at 243-44.

There is a general presumption that a criminal prosecution should be retained in the original district. *Quinn*, 401 F. Supp. 2d at 85; *United States v. Baltimore & Ohio R.R.*, 538 F. Supp. 200, 205 (D.D.C. 1982). "To warrant a transfer from the district where an indictment was properly returned, it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Baltimore & Ohio R.R.*, 538 F. Supp. at 205 (quoting *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964)). As previously stated by courts in this district:

> [S]ound judicial administration and the need for efficient handling of the prosecuting attorney's work load suggest that only rarely and for good cause should a prosecution be withdrawn by a judicial act from the court in which it was brought. . . . . This is especially true where, as in this case, government counsel has carried it before the Grand Jury. Accordingly, to warrant a transfer the defendant must demonstrate and the Court must be satisfied that the prosecution in the district where the indictment was properly returned will result in a substantial balance of inconvenience to himself.

*Baltimore & Ohio R.R.*, 538 F. Supp. at 205 (quoting *United States v. Jones,* 43 F.R.D. 511, 514 (D.D.C. 1967)).

### III. ANALYSIS

In his brief, Mr. Bowdoin argues that this case should be transferred to Florida; the Government opposes his motion. At oral argument, counsel for Mr. Bowdoin focused particularly

on location of possible witnesses and "special elements" which arguably affect a transfer, with a glancing reference to location of defense counsel. He effectively acknowledged that the balance on all other factors are, at best, even. Following his lead, the Court also focuses on the critical factors in dispute.

### A. Inapplicable or Insignificant Factors

The Court agrees that Mr. Bowdoin's location is a very minor consideration. While he is clearly located in Quincy, Florida, which is closer to Tallahassee than to Washington, D.C., the D.C. Circuit has indicated that, although the defendant's residence is a factor to be considered, is it not the controlling factor and its significance derives "solely from its relationship to the convenience of witnesses, records, and counsel." *Jones v. Gasch*, 404 F.2d at 1240. *Platt* itself specifically stated that a defendant is not entitled to a case in his home district. *Platt*, 376 U.S. at 245-46. The "location of events" is not relevant to the transfer decision: the alleged Ponzi scheme operated on the Internet and brought over 100,000 people into its operation from across this country and in foreign countries. Mr. Bowdoin admits that the location of events does not appear to be applicable factor in this case. Def.'s Mem. in Support of Mot. to Change Venue [Dkt. # 21-1] ("Def.'s Mem.") 5.[2] The location of documents is also irrelevant since all documents are available in either location. *Id.* ("This criterion has little application . . . current technology makes such matters easily obtainable in any venue . . . [although] most of the records custodians are located in or near Florida . . . ."). Since there is no indication that the authenticity of documents will be an issue, the Court agrees that this factor has little applicability.

---

[2] The Court refers to the pages of Defendant's Memorandum as numbered by CM/ECF, instead of the page numbers that appear at the bottom of each page, since those numbers erroneously start at page 10.

Further, no "disruption of the business" will occur as a result of trial; ASD and Golden Panda Ad Builder were shut down by Government actions years ago. *Id.* And, if accessibility were to be considered, it would favor Washington, D.C., with three local airports, over Tallahassee. *See id.* at 6 ("each court is easily accessible"). Also, neither side argues that one court or the other has a more congested docket. *Id.* ("Docket conditions are not applicable.").

### B. Location of Possible Witnesses

At oral argument, the Government advised that approximately one-half of its witnesses reside in or around Florida and Mr. Bowdoin asserts that he will call approximately 136 witnesses who live in Florida or environs. Def.'s Mem. 5 ("[T]he majority of the defense witnesses, some 136, will come from, or near, the State of Florida"). Mr. Bowdoin points out that it will be expensive to have witnesses travel from Florida and stay in D.C. hotels while awaiting their turns to testify at trial. Mr. Bowdoin "calculates the decrease in his expenses to be at least $51,000 if the case is moved" to Florida. *See* Def.'s Mem. 6. At the motion hearing however, defense counsel conceded that the defense would not be parading every one of these potential witnesses before the jury. Further, the Government argues that multiple prospective Government witnesses live either in or around the District of Columbia or other parts of the United States, but not Florida, so that this factor should be discounted.

The location of witnesses is not dispositive by itself — particularly where, as here, witnesses actually will come from all over. "Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. . . . [T]ransfer motions must identify the inconvenienced witnesses whom defendant[] propose[s] to call and contain a 'showing' of the proposed witnesses' testimony." *United States v. Haley*, 504 F. Supp. 1124, 1126 (D.C. Pa.

1981). "[T]he court must rely on 'concrete demonstrations' of the proposed testimony." *Id.* (citing

*Jones v. Gasch*, 404 F.2d at 1243). Since Mr. Bowdoin offers only a "naked allegation" that his

witnesses will be inconvenienced, those witnesses are not otherwise identified by name or type, and

no proffer of the nature of their testimony has been made, he has not satisfied the Court that transfer

based on this factor is warranted.

    Two separate considerations lead to this conclusion. First, the projection of 136

defense witnesses in a criminal prosecution is greater than what counsel admitted at oral argument

he will find it prudent to call if this matter goes to trial. The nature of the charged crimes themselves

does not turn on the complicity or credulity of participants in AdsurfDaily. How many witnesses the

defense may really call from the world of 136 possibilities, where they would stay, how long they

would need to be in the District of Columbia, and what they might offer in testimony remain

unknown. It is impossible to balance the acknowledged expense of bringing witnesses from Florida

against the Government's reasons to maintain the prosecution in the District of Columbia on such

a barren record. Second, and more critically, Mr. Bowdoin's bald assertions of witness expense and

inconvenience fail to counter the presumption that a criminal prosecution should be retained in the

district where the indictment was returned, in this case, Washington, D.C. *See Baltimore & Ohio*

*R.R.*, 538 F. Supp. at 205. If the *Platt* factors are equally balanced, a court should deny a motion

to transfer. *Quinn*, 401 F. Supp. 2d at 85. Here, the balance weighs in favor of prosecution in the

District of Columbia.

## C. Location of counsel

    The office of counsel for Mr. Bowdoin is located in Florida. Mr. Bowdoin argues that

this factor supports transfer of the case to the Northern District of Florida in Tallahassee, and further

argues that "trial in the District of Columbia would place upon him the additional burden of his dual counsels' expenses for accommodations and board." Def.'s Mem. at 5. Trial in Florida, however, would place an additional burden on the Government, whose counsel are located here in the District of Columbia. Given the funding emergency facing the Government, the Court declines at this time to treat it as an unlimited source of monies. When this factor is weighed, it is evenly balanced between the parties.

### D. Special Elements

Defendant argues that special factors should tip the scales generously in favor of transferring this case to Tallahassee. First, he is 77 years old with a variety of ailments associated with that advanced age. Second, and critically emphasized at oral argument, Mr. Bowdoin's wife suffers from Alzheimer's Disease and requires his assistance on a daily basis for her medical condition; "[t]here are no other available family members or friends to provide care for her." Def.'s Mot. to Transfer [Dkt. # 21] at 3.

Defendant's age might be a factor to consider except that he was already in his 70's when operating the AdSurfDaily business and traveling around the country promoting it. The inevitable fact that an elderly person accused of a crime becomes older before trial does not provide a basis to transfer his trial closer to his home. Courts rarely transfer criminal trials because of a defendant's health. *United States v. Ashland Oil, Inc.,* 457 F. Supp. 661, 663-64 (W.D. Ky. 1978) (denying transfer request based on defendant's hypertension); *United States v. West Coast News Co.,* 216 F. Supp. 911, 923 (W.D. Mich. 1963) (denying transfer request based on the failing health of one defendant; he suffered a heart occlusion during pretrial proceedings); *cf. United States v. Lopez,* 02-40021-02-RDR, 2002 WL 31498984, *3 (D. Kan. Sept. 5, 2002) (approving transfer for a

defendant who was a quadriplegic completely dependant upon others for her care).

Mrs. Bowdoin's condition is another matter. Alzheimer's is a scourge of modern society. Defense counsel argues that the period of this trial — as yet, unscheduled — may be during the last period when the couple will cognitively know each other. In support, on March 2, 2011, Mr. Bowdoin filed a letter from Dr. Don M. Cross, Chiropractic Physician, dated January 27, 2011. Dr. Cross provided his opinion of Mrs. Bowdoin's current health status and identified "numerous musculoskeletal problems" as well as "severe fibromyalgia with its associated muscle spasms and trigger points . . . and [she is] in considerable pain." *See* Cross Letter [Dkt. # 22] 1. As of January 27, 2011, Dr. Cross apparently perceived no symptoms of Alzheimer's. Mr. Bowdoin submitted an undated chronology of Mrs. Bowdoin's medical treatments, representing care she received between July 31, 2001, and December 10, 2010. *See* Chronology of Medical Care [Dkt. # 27]. Although Mrs. Bowdoin clearly has various serious medical problems, the chronology reflects no diagnosis of Alzheimer's or any other type of dementia. Also, Mr. Bowdoin submitted a summary of Mrs. Bowdoin's medical history. *See* [Dkt. # 29]. This document, prepared by registered nurse Ellen Richter after a review of Mrs. Bowdoin's medical records, concluded:

> At this time, I do not find notations in the health care records which delineate that there are any types of medical restrictions or limitations ordered by [Mrs. Bowdoin's] physicians. Her physical inability to get around is her greatest limitation, but this restriction is not the result of any physician orders.

*See* Summary of Mrs. Bowdoin's Medical History [Dkt. # 29] 4. In addition, Mr. Bowdoin submitted a letter dated February 3, 2011, from Jennifer Swedmark, ARNP-C;[3] Ms. Swedmark

---

[3] "ARNP-C" means Advanced Registered Nurse Practitioner-Certified. Dr. Forsthoefel has been Mrs. Bowdoin's doctor since at least July 2001. *See* Chronology of Medical Care [Dkt. # 27] 1.

practices with Michael Forsthoefel, M.D.  Ms. Swedmark reports:

> We are in agreement with [Mr. Bowdoin] that Ms. Bowdoin would
> benefit from having him with her full time [and not in trial in D.C.].
> She was last seen in our office [on February 2, 2011] for followup of
> chronic medical problems.  She was unfortunately diagnosed with
> Alzheimer's Dementia.  She has not been driving for the last year and
> is not able to complete tasks such as cooking a meal by herself in the
> kitchen.  Ms. Bowdoin forgets to take her twice daily medications
> despite use of a day-of-the-week medication container.  She also
> forgets to eat meals often.  Although she is not wandering during the
> night, her husband reports that he often loses sleep worrying that she
> may leave the house without his knowing.

*See* Swedmark Letter [Dkt. # 31] 1.  Obviously, Ms. Swedmark and Dr. Forsthoefel have relied on

Mr. Bowdoin's report concerning his wife's activities, without direct knowledge of her day-to-day

condition.[4]  Notably, even though Mrs. Bowdoin spent two or three days in the hospital in December

of 2010 under Dr. Forsthoefel's care — for what were diagnosed as "syncopal episodes," "due to

orthostatic changes, meaning her blood pressure dropped when she went from a lying to a standing

position," *see* Summary of Mrs. Bowdoin's Medical History [Dkt. # 29] 4 — the extensive medical

records contained no suggestion of dementia until Mr. Bowdoin told the doctor that he is in federal

litigation in Washington, D.C., and "requested a letter from us explaining that [Mrs. Bowdoin] has

multiple medical problems which require his presence full-time in Tallahassee and is requesting a

---

[4] The hearsay rule assumes that individuals report truth to doctors when seeking a diagnosis.
*See* Fed. R. Evid. 803(4) (statements made for purpose of medical diagnosis or treatment are not
excluded from evidence by the hearsay rule, Fed. R. Evid. 802); 1972 Comments to Rule 803 (Rule
803 "proceeds upon the theory that under appropriate circumstances a hearsay statement may possess
circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in
person . . . .").  Whether people actually tell their doctors the truth has not been verified through
scientific study.  *See* Daphne Miller, *Why Would My Patients Not Tell Me the Truth?*, Wash. Post,
Mar. 15, 2011, at E1 ("There is very little research on why or how often patients keep secrets that
might help a doctor recognize what's going on.  As one colleague put it: 'Isn't that the whole point?
To deceive me?  So how am I supposed to know when it is happening?'").

-14-

move of the trial to this area." Swedmark Letter 1.

The Court expresses its sympathy for the tragedy apparently visited upon the Bowdoins but concludes that Mrs. Bowdoin's medical issues do not constitute a special element warranting transfer of this case. *Platt* identified issues that would impact a defendant's ability to present a defense at a criminal trial. Each of its factors speaks to the rights of a defendant to participate personally — to be represented by counsel of his choice, to present witnesses in his defense, to challenge the Government's evidence, and to obtain a speedy trial. These are the kinds of rights every criminal defendant enjoys. The catch-all tenth factor — "any other special elements which might affect the transfer"— should be read in kind. That is, when a "special element" such as ill health would prevent a defendant from full participation at his own trial, a transfer should be granted. *See Lopez*, 2002 WL 31498984 (transfer approved when defendant a quadriplegic). When the relevant medical condition does not relate to a defendant but to a family member, a transfer is much less warranted and the burden of demonstrating relevance to the trial is higher.

Mr. Bowdoin does not carry this burden. He cites *United States v. Benjamin* for the proposition that courts in this district have liberally construed Rule 21(b) so as to minimize inconvenience to a defendant. *See United States v. Benjamin*, 623 F. Supp. 1204, 1211 (D.D.C. 1985) (citing *United States v. Amador Casanas*, 233 F. Supp. 1001, 1003 (D.D.C. 1964)). Convenience speaks to the presentation of a trial defense. Even so, to obtain a transfer under Rule 21(b) a defendant's convenience must overcome the rights of a prosecutor to try its case in the jurisdiction where the grand jury returned the indictment. Convenience in a criminal defendant's personal life is outside the scope of Rule 21(b), at least without exceptional circumstances and substantial evidence that it would bear on the trial. Neither is presented here.

### E. Court Dockets

Although Mr. Bowdoin specifically does not rely on comparative docket congestion between the District of Columbia and Tallahassee to support his argument, there is a point to be made about this Court's familiarity with the background, facts, legal arguments and parties to this prosecution. The nature of the AdSurfDaily business operations very much impacts the legal defense raised by Mr. Bowdoin that he did not have prior knowledge that his conduct was illegal. There is enormous savings in judicial time if the case is retained here. Such efficiencies would extend to all pretrial motions, motions *in limine*, and trial. This consideration also supports the Court's decision to deny the motion to transfer to Florida.

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is no basis to grant Mr. Bowdoin's motion to transfer this case to the Northern District of Florida [Dkt. # 21] and, in the exercise of its discretion, declines to do so. A memorializing Order accompanies this Memorandum Opinion.


Date: March 16, 2011                                     _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge